### STEPHEN SEARLES v. STATE OF OHIO.

**1. TRIAL COURT CONTROLS QUESTION OF ELECTION BETWEEN COUNTS.**
The question whether a prosecutor will be required to elect between different counts of an indictment is ordinarily one addressed to the discretion of the trial court, and its action thereon cannot generally be assigned for error.

**2. EVIDENCE MAY CURE ERROR IN OVERRULING MOTION FOR ELECTION.**
Where an indictment contains several counts, each charging a criminal offense regarding property, and the record of the trial on the indictment discloses the fact that the property described in the different counts is the same, and that only one transaction was sought to be proved, a reviewing court will not presume that any prejudice resulted to the accused from the refusal of the trial court, on motion for that purpose, to require the prosecutor to elect on which of the several counts he will rely, although the indictment does not directly allege that each of said counts relates to the same property, and to but one transaction.

**3. MOTION FOR NEW TRIAL NEED NOT ASSIGN ERRORS OF LAW.**
Error may be prosecuted on exceptions taken to the rulings of the court on the trial of a criminal case, as to the admission or rejection of evidence, and as to the court's charge to the jury, notwithstanding the motion for a new trial does not allege said grounds.

**4. REVIEWING COURT MAY DETERMINE WHETHER EVIDENCE OF ADMISSIONS OBTAINED THROUGH HOPE OF FAVOR WERE PREJUDICIAL.**
Where an agent is sent by the prosecuting attorney to a person whom he contemplates causing to be indicted for a crime, for the purpose of obtaining admissions of such person as to his part in the commission of the crime, and as to who his accomplices were, and such agent goes to the person and states to him that he has been sent by the prosecuting attorney of the county to find out from him who were concerned in the commission of the crime, and that it would be for his interest and would save him a heavy fine if he would "own up who the parties were," admissions thus obtained are not competent against such person on his trial under an indictment for said offense shortly thereafter returned against him, unless it be first made to appear affirmatively that such representations had no influence in inducing the accused to make such alleged admissions. But where expressions of the accused obtained as above stated, have been by the trial court allowed to be given in evidence over the objections of the accused, a reviewing court may determine whether or not such ruling resulted prejudicially to him.

**5. VERBAL EVIDENCE OF A WRITTEN AGENCY NOT PREJUDICIAL, IF RATIFICATION PROVED.**
Erroneous admission of verbal evidence of a written agency to do an act is not prejudicial, if it is in proof that the principal ratified the act.

**6. IMPROPER FOR PROSECUTOR, IN ARGUMENT, TO STATE THAT A CONFESSION WAS REJECTED BECAUSE NOT VOLUNTARY.**
Where the defendant in a criminal case is asked on cross-examination by the state's attorney concerning alleged admissions by him made to another person whose testimony regarding them had been offered by the state and rejected by the court as not properly obtained, and objection to such cross-examining question is made and sustained, it is improper for the attorney for the state in his argument to the jury, to call attention to said ruling, and to state to the jury that said evidence of such admissions was excluded by the court "upon a long-settled and well understood principle of law that a confession, in order to be admissible, must be voluntary."

**7. UNCONTRADICTED AFFIDAVIT FOR NEW TRIAL FOR NEWLY DISCOVERED EVIDENCE NOT CONCLUSIVE.**
To found a right to a new trial on the ground of newly discovered evidence, the party against whom a verdict has been rendered must make it appear by suitable proof that he exercised due diligence in attempting to procure such proof for use at the trial, and his mere statement in his own affidavit that "at, before and during said trial he did not know of the existence, and could not by the exercise of reasonable diligence have ascertained the same," is not necessarily conclusive upon the question of diligence, even though not contradicted by affidavit or other direct proof.

8. PERSON MAY BE CONVICTED OF ABETTING ARSON, NOT AN OWNER OF THE PROPERTY.

A person, though not the owner of the property, who aids or abets an owner of insured property to commit arson may be rightfully indicted and convicted for aiding and abetting an owner of property to commit the crime defined in section 6832 of the Revised Statutes.

9. GENERAL RULES OF PLEADING GOVERN FORM OF INDICTMENT.

In such case section 6804 does not apply as to the form of the indictment, but this should be in such form as to charge the aider and abettor with the offense according to the fact under the general rules of criminal pleading.

10. DEMURRER IS REMEDY WHERE INDICTMENT FAILS TO ALLEGE INTENT CLEARLY.

Where it is necessary in an indictment to charge a criminal intent, if the intent be charged, but not with clearness, the remedy is by motion, and not by demurrer.

11. ABETTOR MAY BE PROSECUTED ALTHOUGH PRINCIPAL NOT, OR HAS BEEN ACQUITTED, BUT PROOF MUST SHOW HIM GUILTY.

An aider and abettor may be prosecuted and convicted although his principal be not prosecuted, or although the principal has been prosecuted on another indictment and acquitted by another jury, but it is necessary that the proof on the trial of the aider and abettor be such as to show the principal guilty of the crime.

12. ABETTOR NOT TO BE CONVICTED ON HIS OWN ADMISSIONS OF GUILT OF PRINCIPAL.

In such case the proof of admissions of the aider and abettor that the principal was guilty of the act charged, is not, of itself, sufficient proof of the actual guilt of the principal to warrant a conviction of the aider and abettor.

13. EVIDENCE MAY BE GIVEN THAT OWNER MADE PROOF OF LOSS AND CLAIMED INSURANCE.

On the trial of a person charged with aiding and abetting an owner of property insured against loss or damage by fire, to burn the same with intent to prejudice the insurer (Sec. 6832 Rev. Stat.), evidence that the owner made a claim under the policy for the loss, and verified and delivered proofs of loss, is competent.

14. UNCONNECTED AFTER-STATEMENTS OF PRINCIPAL NOT ADMISSIBLE AGAINST ABETTOR

Statements of the principal after the fire that he had hired the accused to burn the property, not made in connection with any efforts of the principal to obtain the insurance, are inadmissible as against the accused.

15. A CHARGE TREATING PRESUMPTION AS CONCLUSIVE WHICH IS OTHERWISE ERRONEOUS

On the trial of a person indicted for aiding and abetting an owner of property to commit the crime defined in section 6832, the trial court charged the jury as follows:

"The law presumes a person to intend the natural and probable consequences of his act; therefore, should you find from the testimony that the owner of the property procured the defendant to burn the same; that it was insured to said owner by said company against loss or damage by fire; that the natural and probable consequences of its being burned would be to prejudice, damage or defraud such insurance company, then you will find such burning to be with the intent to prejudice, damage and defraud such company." Held: That such charge is erroneous as tending to mislead the jury into misapplying a general rule of law, and as treating the presumption alluded to as conclusive.

Error to the Court of Common Pleas of Huron county.

BENTLEY, J.

At the February term, 1891, of the court of common pleas of Huron county, Ohio, the grand jury returned an indictment against the plaintiff in error, containing four counts. The first of these counts, charges that, "Stephen Searles, late of the county aforesaid, on October 31 in the year of our Lord one thousand eight hundred and eighty-eight, at the county aforesaid, did unlawfully, wilfully and maliciously aid and abet one John Ries to burn a certain carriage repair shop of the value of $200, the property of the said John Ries, with intent in so doing, to prejudice, damage and defraud the Ohio Ins. Co., of Dayton, Ohio, the insurer of said property, which said carriage repair shop was then and there insured unto the said John Ries in the sum of $200, by the said Ohio Ins. Co., of Dayton, Ohio, by a contract and policy of insurance duly executed by and between the Ohio Ins. Co., and the said John Ries therefor, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Ohio."

The second count is precisely the same in form, except only that in place of "carriage repair shop," the property described is certain personal property alleged to have been of the value of $882.

The third count charges Searles with simple arson of a certain carriage repair shop of John Ries, of the value of more than $50, in the usual form under sec. 6831 Rev. Stat.—the general section against arson.

The fourth count charges him under sec. 6833 with maliciously setting fire to, and burning certain personal property of John Ries, described therein in the same language as the property is described in the second count, and alleged to be of the same value.

The defendant having been arrested upon said indictment, filed his demurrer to the first and second counts thereof, on the alleged grounds that neither of said counts states facts constituting any offense against the laws of the state of Ohio; and also in the same paper, demurred, "to each one of the counts in said indictment jointly and separately, for that the same, nor any of them, do not set forth facts 'sufficient to constitute an offense against the laws of the state of Ohio."

This demurrer was overruled by the court, but no exceptions appear to have been noted to this ruling, and, perhaps, none was necessary.

Thereupon the plaintiff in error pleaded not guilty to the indictment, and was tried at said February term, and found by the jury guilty under said first and second counts, and not guilty under the third and fourth.

Whereupon the court, having overruled his motion for a new trial, sentenced said Searles to a certain term of imprisonment in the penitentiary.

A voluminous bill of exceptions, setting forth all the evidence and proceedings on the trial, was allowed and made part of the record.

The original motion for a new trial alleges four grounds, as follows:

First—That the verdict of the jury is not sustained by sufficient evidence, but is against the evidence.

Second—Misconduct of counsel for the state in the trial of said action.

Third—The verdict is contrary to law.

Fourth—For error of law during the trial of said action, to which the defendant then and there duly excepted.

A subsequent amendment to the motion alleged the additional ground of newly discovered material evidence.

A motion was made by the counsel for the plaintiff in error at the close of the state's evidence in chief, that the prosecutor elect on which counts he would rely for a conviction, and the court having overruled the same, an exception was taken. This is alleged as error.

The authorities are not all in accord on the question whether it is necessary in an indictment containing several counts relating to transactions regarding property, that it be alleged that each count relates to the same property, so as to make it distinctly appear that only one offense is meant; but where other parts of the record of the case disclose the fact to be that only one transaction is intended or sought to be proved, no error of the trial court resulting from ignoring that supposed defect in the indictment can be regarded as prejudicial to the defendant. Devere v. State, *ante*, 249.

There is no error prejudicial to the defendant below in overruling his said motion. Hotelling v. State, 2 Ohio Circ. Dec., 366, 370.

The errors assigned as occurring in the rulings of the trial court in the admission and rejection of evidence, and in the charge are claimed by the state to have been waived by the plaintiff in error by his failure to definitely allege them in his motion for a new trial.

It has never been our understanding that where exceptions to the opinion of the trial court were properly preserved by a bill of exceptions, their availability in error depended on their being assigned in the motion for a new trial. So far as we are aware, whenever the supreme court has held a motion for a new trial to be a pre-requisite to a proceeding in error, it has been on a question of the weight or sufficiency of the evidence to sustain a verdict, or finding by the court, or referee.

Until the court has acted on the motion for a new trial, based on this ground, the court can have committed no error in regard to it, however much mistaken the jury may have been, and it is error of the court that authorizes the reversal of its judgment.

The case of Remington v. Harrington, 8 O., 507, cited by counsel, arose under the former practice, and it would seem that the motion for a new trial itself, was, by reservation on the circuit, on hearing in the supreme court, and that the question as to the rulings of the trial court in the admissions of evidence was not alleged on error, but was simply argued by counsel.

The court state that matters to be considered on the hearing of the motion should ordinarily be stated therein; but in that case, the court do not decline to consider the question raised for the first time in argument, but on the contrary proceed to dispose of the questions on their merits.

However, we suppose the case of Earp v. Railway Co., 12 O. S., 621, settles the point urged, against the claim of counsel for the state here. The court, in this case just cited, say:

"The only question reserved in this case is, whether a party who, on the trial of an action, takes exceptions to decisions of the court upon admission of testimony, and to the charges of the court to the jury, and has those exceptions reduced to writing during the term, and signed by the judge, may allege error in a petition filed in the district court, without also having made a motion in the court of common pleas for a new trial, on the ground of error of law occurring at the trial and excepted to by the party making the application. We think that he may. The right of exception secured by the Code, sec. 290 et seq., does not depend on the exercise of the right to move for a new trial, secured by the Code, sec. 297 et seq.

"The question reserved will be so decided, and the case remanded to the district court for judgment accordingly."

Moreover, the last clause of the motion for a new trial in this case, does embrace in general terms these alleged errors, and we deem ourselves bound to consider and dispose of them on their respective merits.

On page 2 of the bill of exceptions an objection was raised to certain testimony of a witness, Harlan Stewart, called by the state to prove the making of the contract of insurance charged in the indictment. He testified that he was the local agent at Norwalk of the said insurance company; that he had written and signed the policy, and delivered it to said Ries; and that the signatures of the officers of the company, which he knew, were to the policy. But shortly afterwards testified that he thought that the officers' signatures were lithographed. He further testified that the policy was issued by authority of the company.

Thereupon the court said to counsel for the state: "It seems to me that you ought to show by the witness that he has authority from the company." And from that point the record proceeds as follows: "Mr. Kellog (prosecuting attorney): Had you authority, as such agent, to issue such policy?" Answer: "Yes, sir; I sent in a daily report to the company, and the company approved it." "Mr. Young (counsel for defendant): We object to the last part of his answer." Mr. Young: "Was your authority in writing?" Answer: "It was, yes, sir." Mr. Young: "We move the court to exclude the testimony as to his authority."

This motion the court overruled, and the defendant's counsel excepted, and this ruling of the court is assigned for error.

We think that this motion was technically well taken, and should have been granted; but we must dispose of the assignment of error under rules that require us to disregard it, unless, in view of the record, as it is presented to us, it appears to have resulted in prejudice to the defendant below. Supposing that after that ruling, the written authority had been introduced, and that it clearly showed a direct authority to the agent to issue this policy, could the ruling here, in that case, be really prejudicial to the defendant?

Had the motion been granted, the witness's statement that he had authority from the company to issue the policy would not have remained with the jury. But the statements that he did issue it, that he reported it to the company, and that the company approved it, would have remained. This latter statement was objected to, indeed, but no ruling was made upon it, and, of course, no exception was taken.

Afterwards it was shown that the insurance company, recognizing the policy adjusted the loss by fire under it.

In view of this state of the record, we cannot find that the overruling of the motion was an error prejudicial to the defendant below. These considerations also apply to the exception to the admission of the policy in evidence, and we think the ruling in that regard was technically correct.

The policy purporting to bear the signatures of the company's officers, and of the alleged agent, was shown to have been issued and delivered, and the

alleged agent's action reported at once to the company, which approved it. How that approval was manifested, does not appear; but with that proof standing, we think that *prima facie* proof of authority to issue the policy was made, and sufficient to admit the policy in evidence, and, at all events, subsequent proof removed any resulting prejudice to the defendant below.

Objection was also taken on page 12 to the admission of Ries' statements and acts subsequent to the fire in making a claim against the company, and swearing to proofs of loss. Granting that the crime was properly charged in the first and second counts, this objection was properly overruled. It was required of the state to prove that Ries procured the fire to be set in order to defraud the insurance company, and that the defendant below aided and abetted him therein.

Ries's application to the insurance company, under the policy, was a part of the *res gestae*, a part of the working out of the scheme which must have been contemplated by both Ries and the defendant, and proof of it was competent under the ordinary rules.

It was held a few months ago by the circuit court at Cleveland, that on the trial of a person on an indictment for forging a will, proof of the efforts of the beneficiary under the will to have it admitted to probate, and that he afterwards made a claim under the will to certain property, was competent against his co-conspirator and accomplice in the forgery, though not present, as a part of the *res gestae*, and as an essential part of the execution of the object and purpose for which they had combined.

In this case of Corbett v. State, *ante*, 79, the supreme court refused permission to file a petition in error, so that the ruling of the circuit court upon that material and essential matter, apparently has the approval of the supreme court.

The objections appearing on pages 289 and 290 of this bill of exceptions relate to the admission of evidence of alleged confessions or admissions of the defendant to the witness Odell. Objection to the evidence was made, and the court overruled it, and the witness related certain preliminary parts of conversation with the defendant And thereupon, on the objection being renewed, the court finally sustained the objection to further evidence of the conversation, but did not exclude such parts as had already been given.

The witness stated that the prosecuting attorney of the county sent him to the defendant to talk to him, and to endeavor to find out who were concerned in the said fire, and that he (the witness), did thereupon go to the defendant and have a conversation with him, wherein he (Odell) told the defendant that he had been sent to him by the prosecuting attorney to see if he would not tell who the parties were that were concerned with him in that fire; and that it would be for his interest and save him a heavy sentence, if he would own it up who the parties were."

The witness testified that, at first, Searles said that "he would tell the truth, and nothing but the truth, when he was put upon the stand, let it fetch in who it would;" that he and Searles talked there probably twenty minutes; and at this point the court finally sustained the objection to further statements of the alleged conversation, reciting that "it clearly appears that the inducement held out to the defendant by the witness, coming as the representative of the public prosecutor, and that whether his declarations were true or false, Searles had a right to believe them." It seems that the conversation referred to occurred in June, 1889, a long time before the present indictment was found. Whether any other indictment had been found does not appear, but the character of the testimony shows that the prosecution of the defendant for the crime was contemplated by the prosecutor.

The rules upon this subject are laid down by the supreme court in Spears v. State, 2 O. S., 584. and in Price v. State, 18 O. S., 419.

We have no doubt that the alleged admissions sought to be introduced in evidence would have been incompetent, and the question is, whether such part of the statements of the defendant as were given over the objection of his counsel were so prejudicial in their character as to warrant our disturbing the verdict.

There is, perhaps, an implication in the alleged answer of the defendant, that he may have known something about the burning charged, and we think the better and safer course would have been to exclude it, but we are not clear enough of its injurious consequences to justify us in reversing the sentence on account of its reception.

On the trial, the defendant's counsel asked the following question of one of the defendant's witnesses: "You may state what John Ries's reputation is as a law abiding citizen," and the court sustained the state's objection to the question, and the defendant's counsel excepted.

The question whether or not it would have been competent for the defense to show that at the time of the alleged fire, the general reputation of Ries in the community where he was known, or his actual character as a law-abiding citizen was good, is not properly raised by this exception.

The ruling of the court upon the question as put, was correct, and there was no offer to prove anything as to his general reputation, or character as a law-abiding citizen.

The plaintiff in error testified as a witness in his own behalf, and on his cross-examination, counsel for the state began to ask him concerning the supposed conversation with Odell.

Thereupon the jury were excused, and, while there is no statement to that effect, the record indicates that they were out of the court room until after the attempted cross-examination on this subject was completed, and after the cross-examination as to other supposed admissions or confessions of the defendant was concluded.

Many questions were put to the defendant on cross-examination regarding his supposed confession to said Odell, and also to the prosecuting attorney, Mr. Kellogg, and offers to prove such admissions and confessions of the defendant's guilt of the burning charged were made by the state's attorneys; but objections by the defendant's counsel to the questions were sustained, and the testimony was not given.

Upon the final argument of the case to the jury, one of the counsel for the state said to the jury:

"Gentlemen, you remember that objections were made to certain matters we offered to prove by Mr. Odell and Mr. Kellogg, and that you were excluded from the room during the discussion of its admissibility. The court refused to permit the testimony upon a long settled and well understood principle of law that a confession to be admissible in evidence must be voluntary."

Here one of the counsel for the defendant below interposed an objection, and called the counsel for the state to order, and also called the attention of the court to the improper language of the counsel for the state. Whereupon the court said that "the line of argument had as yet transgressed no rule of law, but should be pursued no further," to all of which the defendant's counsel then and there excepted.

We have no doubt that this was said in the warmth of an extemporaneous argument and without any intent on the part of the counsel to overstep the bounds of legitimate advocacy; but the court recognized that the full limit had been reached, since the judge remarked that, although the line had not as yet transgressed the rule, it should proceed no further.

It was then recognized as proceeding towards the bounds, and not parallel with them; and that it approached so near that any further extension of it would be an infraction of the rules.

We should have been far better satisfied had the court ruled that such a line of argument was inadmissible, and directed the jury as to their duty to carefully exclude from their consideration any statements or claims, or hints of any confessions or admissions of the defendant, which had been excluded by the court.

It is not always easy for counsel to nicely trim an extemporaneous argument so that it may bear comparison at all points with the strict rules of propriety, and, ordinarily, much latitude is allowed without objection by adverse counsel, rather than take the chances of injury to their cause by an interruption or complaint.

But at least, when the court's attention is plainly called to the fact that improper argument is being made, we think it incumbent on the court and upon offending counsel, to provide such instant reparation for any inadvertent or im-

proper remark as may be as near adequate as possible to prevent the injury feared.

Nothing of this kind was done in the case, except that further remarks in that line were forbidden; but the things that had been said were left with the direct statement of the court that they did not transgress any rule of law.

Did not the rules governing our action require us to find the error manifest, and to allow every reasonable intendment and presumption to support the action of the trial court and the verdict, we should feel that this exception should be sustained. But we have concluded not to disturb the verdict for this cause.

The objection to the other statement of counsel for the state to the jury "that they must have observed how vehemently the counsel for the defendant had asserted the innocence of Ries, but how carefully they refrained from expressing opinion as to the guilt or innocence of Searles," is not meritorious. The attention of the court was not called to the objectionable words at the time, and had it been, we are unable to see that the court should have interfered.

The court did not err in refusing to award the defendant a new trial on the alleged ground of newly discovered evidence.

The trial court may have deemed the defendant wanting in diligence in that he failed to discover and present at the trial the evidence he claims to have discovered, since the general statement in his affidavit in support of his motion that he did not before, at, or during the trial "know of its existence," and "could not by the exercise of reasonable diligence have ascertained the same," is not necessarily conclusive upon the question of diligence, even though uncontradicted by affidavit. The court may well have concluded, notwithstanding this, from the nature of the facts disclosed, and in the absence of any showing that this additional evidence was then unknown to the defendant's counsel (and upon this see Parks v. State, 4 O. S., 234), and in the absence of any specification of any acts, or facts in support of his general statement that reasonable diligence would not have enabled him to have seasonably discovered it, that the proper diligence had not been exercised. Stevens v. Hey, 15 O., 313; Potter v. Bunnell, 20 O. S., 150, (163).

Again, said evidence would be cumulative to that offered on the trial, and simply of an impeaching character, and would not probably produce, much less require, a different verdict from the one rendered.

See in this respect the R. R. Co. v. Long, 24 O. S., 133.

The remaining assignment of error relates to the sufficiency of the indictment and the sufficiency of the testimony to sustain the verdict. The question arising on these requires an examination of sections 6832-3-4, and section 6831 also.

It is urged by counsel for the plaintiff in error that Searles, not being the owner of the property burned, could not be guilty of an offense under 6832, and that he cannot be held guilty of being an aider and abettor in a crime wherein it is impossible that he could be principal.

This argument challenges the attention, but is unsound. It is certainly competent for the legislature, having defined the crime, as in sec. 6832, to provide that any person, though not an owner of the property, who aided or abetted an owner of insured property to commit the crime defined by sec. 6832, should be deemed guilty of a substantive offense. Section 6804 undoubtedly makes that provision unless the word "prosecuted," used therein, and construed in Hanoff v. State, 37 O. S., 179, as having the force of "indicted," forbids the conclusion that the legislature so intended.

To charge Searles in an indictment under the authority of sec. 6804 as a principal in the crime defined in sec. 6832, would necessitate the putting in the averment in the indictment that Searles "was then and there the owner of said insured property."

If this could be done, and he be convicted thereunder, by force of the provision of sec. 6804, although that absolutely requisite averment in the indictment

was proven to be false, that section must be held unconstitutional, for the legislature in prescribing forms of indictment, must not assume to make it unnecessary that the indictment must truly set forth the nature and cause of the accusation against the person prosecuted. We think that section 6804 should not receive such a construction as to thus render it obnoxious to the charge of unconstitutionality, and that the word "may" therein, has not the force of "must;" but that in proper cases, such as those arising under sec. 6832, the form of charging the aider and abettor according to the fact, can, and should be used, the aiding and abetting being made a distinct and substantive offense. Goins v. State, 46 O. S., 457, (492); Noland v. State, 19 O., 131; Brown v. State, 18 O. S., 496; Hanoff v. State, 37 O. S., 178.

It is true that the plaintiff in error, not being the owner of the property, could not be guilty as a principal under sec. 6832; but he might be charged and convicted of aiding the property owner, if the latter committed the offense defined by sec. 6832. His guilt must needs depend upon the guilt of the principal; hence, the guilt of the principal must be alleged and proved.

I have copied the form of the first count in the indictment in the present case that it might be examined as to the sufficiency of its allegations in the light of this view of the law.

There is no direct allegation that John Ries burned the property in question. The statement is that Stephen Searles did willfully and maliciously aid and abet John Ries to burn it; and perhaps by fair construction, that is alleging with sufficient "certainty to a certain intent in general," by implication that John Ries burned his property, and that Searles aided and abetted him in so doing. This would not necessarily constitute a crime in either. Ries must be charged with burning his property with intent to prejudice the insurer, or Searles cannot be guilty of aiding and abetting him.

The words in the indictment, "with intent, in so doing to prejudice, damage and defraud the Ohio Ins. Co.," according to the most reasonable construction, it seems to us, refer to Stephen Searles.

Of course, Searles may have had one intent, and Ries another when both joined in setting the property on fire; but if, as claimed by counsel for the state, the words charging "intent" may refer to the act of Ries, it must be admitted that the indictment is, at least, vague, indefinite and ambiguous as to a very vital part of it.

If the intent is charged, but not with sufficient clearness, a motion to quash would have been the proper remedy. If the intent is not charged at all, it is ground for demurrer.

No motion to quash was made, but a demurrer only was interposed.

With great hesitation, we conclude to regard it as a defect in the indictment which should have been reached by a motion to quash instead of by demurrer.

We have examined in this respect, besides the authorities, these secs. of the Rev. Stats.: sec. 7248, 7249, 7250, *et seq.* We also call attention to sec. 7215.

As to the sufficiency of the evidence: We have seen that it is necessary, in order legally to convict the defendant, that Ries should be charged as a principal, and it is equally requisite that the evidence prove his guilt.

While Searles might be tried and convicted whether Ries be prosecuted or not, or even if another jury might have already acquitted Ries, yet, in order for the jury which tries Searles, to properly arrive at a verdict against him, it is essential that it be satisfied of the guilt of Ries as a principal.

Considering the offense of Searles as a substantive offense, as it is, the *corpus delicti* is the burning of the property by or through the procurement of Ries, with the intent on the part of Ries to prejudice the insurer. In other words, the guilt of Ries, under section 6832, is the essential basis of any offense by Searles under section 6804, since Ries only could be guilty of the offense defined by section 6832.

The testimony of the witness Brewer is direct as to Searles' participation in the burning of the property of Mr. Ries.

This testimony would, if believed, and leaving out the element of Ries's guilt, make out the crime of arson, under section.6831.

But, of these offenses, the jury have directly found Searles to be not guilty.

We look in vain through the evidence for anything tending in any appreciable degree, to prove the actual guilt of Mr. Ries.

There was testimony tending to show admissions and statements of Searles that Ries was guilty, and had procured him (Searles) to aid him in burning the property, in order to get the insurance.

Is that kind of evidence sufficient in itself, as against Searles himself, to prove the element of Ries's guilt? We think the authorities are all to the effect that it is not.

Upon this, we call attention to the case of Blackburn v. State, 23 O. S., 146, and 1 Bishop on Criminal Procedure, 3rd Edition, secs. 1058 and 1059.

The reasoning in the case of Morrison v. State, 5 O., 438, we think, applies to the facts in this case, and supports the views we have expressed.

Any alleged statement of Ries that he had employed Searles to do said burning, made after the fire and not in connection with anything he was then doing in order to collect the insurance, could not be used on the trial of Searles alone, to prove the actual guilt of Ries as a basis for the conviction of Searles.

We think these conclusions are borne out and required by the ruling of the supreme court in the case of Dilcher v. State, 42 O. S., 173 to 177 et seq.; Sharpe v. State, 29 O. S., 266 (264).

The case in 42 O. S., 173 to 177, was an action or prosecution for subornation of perjury. The statement and admissions of Stewart, who was alleged to have actually committed the perjury, were being considered by the supreme court, as to whether they were admissible as against Dilcher, who was charged with suborning him to commit the perjury, and the court say:

"They were at best but narrations of supposed transactions of the past, and if they were admissible at all against the prisoner, it must have been upon the ground contended for by the state, that, as they involved confessions or admissions by Stewart pointing to his subornation by the prisoner, they tended to establish Stewart's guilt, and hence were admissible against the prisoner. In support of this view, the state cites us to the Rev. Stat., sec. 6804, which provides that: 'Whoever aids, abets, etc., may be prosecuted and punished as if he were the principal offender.' The claim is that any evidence which would be competent to prove Stewart's guilt, if he were upon his separate trial, is admissible against the prisoner.

"The purpose of sec. 6804 was to hold an accessory before the fact equally guilty with the principal offender, and not to introduce into our criminal practice a new rule of evidence.

"To permit the principal offender, by his mere private declarations or confessions, made in the absence of the accused, without the sanction of an oath, without opportunity to cross-examine him, without opportunity for the jury to observe his manner or deportment, or to judge of his motives. his means of knowledge, or his relation to the accused, whether hostile or friendly. to bind the latter, (when such declarations or confessions do not tend to establish or characterize any substantive act or fact in issue), would seem. at first view at least, to require the support of strong authority."

On this point also attention is called to Sharpe v. State, pages 263 and 264, which states that:

"On the trial of a person indicted under the 36th sec. of the Crimes Act, (S. & S. 266), for procuring another to commit an offense, it is not competent to prove the declarations of the principal offender made after the completion of the offense, for the purpose of showing the guilt of the procurer."

The principles laid down and recognized in these cases bear out our conclusions that any statement of Ries, after the fire, that he had employed Searles to do the burning, not made in connection with any effort of Ries to obtain the insurance on his property, was inadmissible as against Searles.

Our conclusion is that the evidence being not sufficient to sustain the verdict, in that the evidence contains no legitimate proof; that is, the guilty act and

intent of Ries, the court of common pleas erred in overruling the motion of the defendant below for a new trial.

We feel less hesitancy in our conclusion than we perhaps would if the evidence, such as it is, came from a different mind. It is to be remembered that the principal witness against the plaintiff in error was confessedly as guilty as he, whatever might be that degree of guilt moral or legal; and that witness had hardly left the witness stand on a former occasion when he had testified similar things, till he intimated to some, and boldly stated to others, that his testimony had been false. Admitting certain of these statements on this trial, he excuses himself for making them on the ground that they were made jocularly, or in fun.

The quality of mind that could find material for light jocularity in testimony under oath involving the moral infamy, if not the legal guilt of himself and a fellow man, is perhaps to be expected where the general mental equilibrium is no more fixed and stable than the testimony of this witness as preserved in this record indicates; but the probative force to be given to such testimony of such a witness in such a case ought to be measured by reasonable and considerate caution.

Doubtless the instruction by the court to the jury in that part of the charge excepted to had a strong influence in determining the verdict.

The paragraph excepted to is as follows:

"In both of these counts, (1st and 2nd), the intent must be to prejudice, damage or defraud the insurance company set forth in these counts, to-wit: The Ohio Insurance Company, of Dayton, Ohio." "The law presumes a person to intend the natural and probable consequences of his act; therefore, should you find from the testimony that John Ries. the owner of this carriage repair shop and personal property, procured the defendant Searles to burn the same; that it was then insured to said Ries by said company against loss or damage by fire; that the natural and probable consequences of its being burned would be to prejudice, damage or defraud such insurance company, then you will find such burning to be with intent to prejudice, damage or defraud such company."

There are certain paragraphs attached to the bill of exceptions, and before the paper that is marked "charge of court" which appear to be requests, some by the defendant's counsel, and some by the counsel for the state, and the word "given" is written on the margin opposite each.

There is no reference to them elsewhere in the bill of exceptions, and no other indications whether they were requests to charge, or whether they were given or refused. These and the paper marked "charge of the court" are separated by several lines of the bill of exceptions, and several pages of exhibits from the statement "thereupon the court gave to the jury the following charge." But we have treated the papers so attached as the charge of the court and the requests of the counsel to charge, and have considered such requests as given by the court to the jury.

In giving these requests on behalf of the defendant, the court instructed the jury that to convict Searles of aiding and abetting Ries, they must find that Ries procured said burning to be done with intent to prejudice the insurance company, and that Searles must have known the said intent of Ries, and that the property was insured.

But when afterwards, the court gave this general charge, the above quoted paragraph was given without modification or other condition than appears therein.

We think the paragraph excepted to was erroneous as tending to lead and even to direct the jury to find the intent and guilt of Searles upon the presumption claimed to arise from the circumstances recited alone.

The charge treated such presumption as conclusive, whereas, even as regards Ries, it would not have had that character; and the giving of said request in another part of the charge, would not cure this error, since the instruction that guilty intent must be found. is of no efficacy if an erroneous rule, whereby the jury are to find that intent, is laid down.

For the said error in the charge of the court, and for error in overruling the motion of the plaintiff in error for a new trial on account of the insufficiency of the evidence to justify the verdict, the judgment of the court, sentencing the plaintiff in error upon the verdict, and adjudging costs against him, is reversed, and the said verdict is set aside, and the cause is remanded to the court of common pleas for a new trial, and judgment is awarded against the state for the costs in this court.

Huron H. Kellogg, pros. att'y, and S. A. Wildman, for the state.
Jay Patrick and S. M. Young, for plaintiff in error.